## Richmond.

## VIRGINIA RAILWAY AND POWER COMPANY V. HUBBARD.

### March 15, 1917.

1. DAMAGES—*Aggravation of Previous Disease—Necessity of Alleging Disease.*—Where a wrong is committed, whatever the physical condition of the injured party, whether he be strong or weak, healthy or sickly, the harm done by such wrong, including the aggravation of existing ailments, if any, is the natural consequence of the defendant's act, and need not be specially averred.

2. DECLARATION—*Allegation of Pre-existing Disease.*—In an action by a female passenger against a street railway for injuries received when an alleged drunken passenger, upon the car suddenly starting, fell upon her, striking her with his hand or fist in the abdomen, the declaration alleged that such drunken passenger fell with great force and violence against the plaintiff, injuring her back and inflicting serious internal injuries upon her, and otherwise greatly bruising, wounding, and hurting her, and that the plaintiff became and was sick, sore and lame, and so continued for a long space of time, during which time plaintiff was prevented from attending to her lawful and necessary affairs, and was obliged to expend a large sum of money in endeavoring to be cured, and in payment for a serious surgical operation necessitated by her injuries, and during all of said time suffered and underwent great pain and anguish, both physical and mental, and had been permanently injured and impaired.

   *Held:* That the allegations of this declaration were sufficient to admit proof of the existence of a pre-existing tumor, from which she had suffered little inconvenience; that as a result of the blow an operation was made necessary; the physical pain preceding and succeeding the operation, and of the condition of the plaintiff at the time of the trial.

3. DAMAGES—*Personal Injuries—Pre-existing Disease.*—In such an action the defendant's rights are fully safeguarded by an instruction that the jury, if they believe from the evidence that the plaintiff had a fibroid tumor before she received the injury complained of, then the plaintiff can recover nothing on ac-

count of any condition existing before said injury, or for anything that would have resulted from said condition independently of the accident.

4. CARRIERS—*Degree of Care—Injury to Fellow Passenger by a Drunken Passenger.*—A carrier of passengers owes to all passengers a very high degree of care in protecting them from the negligence or wrongs of their fellow passengers. Where a passenger in such an intoxicated condition that the conductor in charge of the car knew, or by the exercise of proper care ought to have known, that his condition would probably become a source of danger or menace to other passengers on the car, long enough before the happening of the injury complained of to the conductor to take proper precautions to prevent it, then it was his duty to take such precautions as were in his power to prevent the accident.

5. CARRIERS—*Passengers—Drunken Passengers.*—A conductor should not wait until a drunken passenger has committed some disturbing act before taking some action, but should take proper action commensurate with the probable danger whenever such passenger gives reasonable cause to believe that an accident is likely to happen.

Error to a judgment of the Circuit Court of Norfolk county, in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Williams, Tunstall & Thom* and *H. W. Anderson,* for the plaintiff in error.

*Rumble & Campe,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The evidence in this case is sufficient to show that Mrs. Hubbard, while riding as a passenger on a car of the defendant company, was injured because a fellow passenger, Zimmer, who was standing in the aisle of the car stooping

over talking to another passenger, when the car suddenly started, fell upon her, his hand or fist striking her in the abdomen, from which blow she immediately suffered very great pain and inconvenience. Mrs. Hubbard for some years previous to that time had had a fibroid tumor in her womb, which she had been advised to have removed, but which had not been done because, as she states, it had not caused her any trouble or inconvenience, had required no treatment, and had not interfered in any way with her efficiency or comfort. As the result of the blow an operation was made necessary. The accident occurred on Saturday, January 2, 1915. Immediately after the injury she was seized with violent pains and became unable to retain her urine. This condition continued until Wednesday, January 6th, when, upon the advice of her physician, she went to a hospital to undergo an operation. She was found to be too sore and sensitive for an immediate operation, and for this reason it was deferred until January 14th. Mrs. Hubbard was at this time thirty-six years of age, and it was necessary to remove the womb, both ovaries and the Fallopian tubes.

The negilgence relied on is that Zimmer was so much under the influence of liquor as to make it probable that if allowed to stand in the aisle just such an accident to some passenger as happened to Mrs. Hubbard was to be anticipated. There is irreconcilable conflict in the testimony as to the extent of Zimmer's intoxication, and the company urges, among other grounds of defense, that there was nothing whatever in his condition to indicate to the conductor of the car that he was at all dangerous to any one, and hence that there was no negligence upon which to base a recovery.

That it was error to permit evidence as to the aggravation of the injury growing out of the pre-existing tumor is alleged. Thus, counsel states that his assignments of error Nos. 1 and 3 involve "the question whether there can be a

recovery for the aggravation of a pre-existing disease when the declaration is framed on the theory that the disease was produced by the injury."

While this question was apparently left undecided in *Norfolk, &c. Co.* v. *Williar*, 104 Va. 679, 52 S. E. 380, it was determined in accordance with the view herein expressed in *Norfolk, &c. Co.* v. *Spears*, 110 Va. 113, 65 S. E. 482.

In the reply brief of the plaintiff in error this is stated: "The whole point we make is that the declaration was silent as to the tumor in the plaintiff's womb. But the declaration does say in express terms that the injury the plaintiff received was due to the accident, while the proof shows that it was far more due to the presence, undisclosed by the declaration, of the tumor."

Our especial attention is called to *Whitlock* v. *Mungivan*, 36 R. I. 386, 90 Atl. 756, as support for the contention. In that case, however, the declaration merely alleged that the defendant, "with force and arms, a violent assault in and upon the body of the plaintiff did then and there make, and him the plaintiff, did then and there with like force and arms, beat, bruise, wound and evil entreat, and other wrongs to the plaintiff then and there did," to the damage of the plaintiff, etc.; and there the court reversed the judgment because evidence had been admitted of the aggravation of a rupture and of the amount of medical expenses incurred, and also of the continuance of plaintiff's pain and suffering after the date of the issuance of the writ, and of his physical condition at the time of the trial, for the reason, as stated in the opinion, that, if it was desired to recover such damages it was necessary to allege them. There is little support here for appellant's contention in the case now under consideration. In the declaration which we are now considering, the plaintiff alleges that Zimmer "fell with great force and violence upon and against the said plaintiff, injuring the plaintiff's back and inflicting serious internal

injuries upon the said plaintiff, and said plaintiff was otherwise greatly bruised, wounded, hurt and injured, and also by means of the premises said plaintiff became and was sick, sore, lame and disordered, and so continued for a long space of time, to-wit, hitherto, during all which time said plaintiff was prevented from attending to her lawful and necessary affairs, and thereby also said plaintiff was obliged to expend and did pay out and expend divers sums of money, amounting in the whole to a large sum of money, to-wit, the sum of five hundred dollars, in and about endeavoring to be cured of the said bruises, hurts and injuries so received as aforesaid, and in and about a serious surgical operation necessitated thereby, and during all of said time suffered and underwent great pain and anguish, both physical and mental, and had been, by means of the premises, permanently injured and impaired."

The only reason for the rule relied on is that the declaration should fairly give notice of the claim of the plaintiff, and under our statute, if the allegation is considered by the defendant to be too general and vague, he has the right to call for a bill of particulars and to require further specifications of such claim. Here, then, the allegations of the declaration sufficiently advised the defendant of the purpose of the plaintiff to prove that a surgical operation was necessitated, that medical expenses had been incurred, that she had suffered great pain, physical and mental, and that her injuries were permanent; so that even if the rule be as strict as is claimed, it is sufficiently met by this declaration, and we find no evidence in the record which is inadmissible under these allegations. We do not understand that it is denied that the aggravation of an existing disease may be proved, if sufficiently alleged; certainly the authorities are abundant to establish this proposition.

It is succinctly stated in 8 R. C. L. 436 thus: "It is a general rule that one who negilgently inflicts a personal in-

jury on another is responsible for all the ill effects which, considering the condition of health in which the plaintiff was when he received the injury, naturally and necessarily follow such injury. Hence a defendant's liability is in no way lessened or affected by reason of the fact that the injuries would not have resulted had the plaintiff been in good health, or that they were aggravated and rendered more difficult to cure by reason of the fact that he was not in good health. In other words, where the presence of disease, or the existing physical condition, aggravates and prolongs the injury and correspondingly increases the damages, such increase or added damages may be recovered."

This general statement of the law is amply supported by the authorities cited in the notes.

There have been many cases as to the necessity of alleging the aggravation of an existing ailment, if recovery is sought therefor, and there has been some conflict of opinion, but we believe the true doctrine is stated in 8 R. C. L. 622 in this language: "It has been held that damages cannot be recovered for a mere aggravation of injuries previously received where such aggravation is not alleged in the complaint; but the more liberal rule is that where a wrong is committed, whatever the physical condition of the injured party, whether he be strong or weak, healthy or sickly, the harm done by such wrong, including the aggravation of existing ailments, if any, is the natural consequence of the defendant's act and need not be specially averred."

In *Peshine* v. *Shepperson,* 17 Gratt. (58 Va.) 472, 94 Am. Dec. 468, this court, in an action for trespass, and under an allegation that the defendant entered the store of the plaintiff "and then and there and from the said store took and carried away a large quantity of the goods and chattels of the plaintiff, to-wit, etc., all of great value, viz: of the value of $5,000, and other wrongs to the plaintiff, then and there did," adopted the most liberal rule, upon the

ground that the plaintiff was entitled to recover for all such damages as were the natural, proximate and necessary consequences of the act, allowed proof of injury to the credit and business standing of the merchant and injury to his business resulting therefrom, as to whether the business had been profitable or unprofitable, and as to the extent and character of the business; as affording the best guide to the jury of which the nature of that case admitted.

We find no error in the refusal to grant the instructions offered by the plaintiff in error embodying the contrary doctrine; and its rights in this case were fully safeguarded by instruction No. 5, which was granted, and reads thus:

"The court instructs the jury that if they believe from the evidence that the plaintiff had a fibroid tumor before she received the injury complained of, then the plaintiff can recover nothing on account of any conditions existing before said injury, or for anything that would have resulted from said conditions independently of the accident."

The allegations of the declaration were sufficient to admit proof of the existence of the tumor and of the immediate effect of the blow, of the physical pain preceding and succeeding the operation, of the operation itself, and of the condition of the plaintiff at the time of the trial.

We are asked to reverse the judgment upon the ground that the verdict is contrary to the law and the evidence.

It is admitted (and the authorities are abundant to sustain the proposition) that if Zimmer was in such an intoxicated condition that the conductor in charge of the car knew, or by the exercise of proper care ought to have known, that his condition would probably become a source of danger or menace to other passengers on the car, long enough before the happening of the injury to enable the conductor to take proper precautions to prevent it, then it was his duty to take such precautions as were in his power to prevent the accident.

A carrier of passengers owes to all passengers a very high degree of care in protecting them from the negligence or wrongs of their fellow passengers. 8 Ann. Cas. 222; Ann. Cas. 1912-C, 278; 4 R. C. L. 11, 81, *Jansen* v. *Minneapolis, &c. R. Co.,* 112 Minn. 496, 128 N. W. 826, 32 L. R. A. (N. S.) 1206; *Va. Ry. & Power Co.* v. *McDemmick,* 117 Va. 862, 86 S. E. 744; *Montgomery Traction Co.* v. *Whatley,* 152 Ala. 101, 44 So. 538, 126 Am. St. Rep. 17; *Murgatroid* v. *Blackburn, &c. Co.,* 3 Law Times Rep. 180.

We are urged to give careful attention to the evidence, upon the theory that even considered as upon a demurrer to the evidence, the verdict and judgment are erroneous. Having done so, we are unable to differentiate this case from many others which have been previously decided by this court, where the evidence is conflicting.

The verdict is sustained by the evidence of the defendant in error, Mrs. Hubbard, who states that Zimmer entered the front door of the car in a drunken condition; that he came in in an unsteady and rather loud and boisterous manner; that he stood with his back to the front door of the car and talked in a loud voice, and was unsteady all of the time; that he moved about in the aisle of the car in a noisy and unsteady manner, trying to shake hands with other passengers; that the smell of whiskey was strong upon his breath; and that one of the passengers told him to sit down or he would get into trouble. Another witness, Eanes, testified that he saw Zimmer enter the front door; that "he appeared to be a drunken man, to me—a man full of whiskey;" that he leaned against the front door of the car; that he didn't remember his words, that "He was just running on a whole lot of gab," and doing "a whole lot of talking;" and that he was staggering and carrying on a whole lot of foolishness that a sober man would not do; that he was not using any profane or indecent language. Another witness, King, says that he had his attention attracted to

Zimmer by his talking and standing and swinging from side to side; that he was intoxicated and unsteady on his legs, and looked as if he might fall over on somebody; that he was liable to fall and hurt himself, or hurt somebody else; that this lady (referring to Mrs. Hubbard) appeared to be annoyed; and that a lady sitting in the corner next to Zimmer appeared to be afraid he would fall on her. This latter statement is confirmed by a witness for the company, Branton.

After allowing for all of the exaggeration which in view of the contradictory testimony introduced by the defendant may be apparent, it appears that the fact that Zimmer's condition was dangerous to his fellow passengers is confirmed by some of the witnesses introduced by the defendant. For instance, Branton, when asked what was Zimmer's condition, answered: "He got into the car; when he first came into the car he stopped at the door and leaned up against the door, and stayed there talking and carrying on." This witness also admits that Zimmer was not sober, and that Mrs. Branton, who was seated beside witness, was afraid he might fall on her. Brinkley, another witness for the defendant, stated that Zimmer "looked to be a little drinky," and on cross-examination said that he told Zimmer to go and sit down, but he replied that he had paid his fare and had a right to stand up. Another witness for the defendant, Blow, said that Zimmer always appeared to be about half full of liquor, and on this occasion he appeared to be about half drunk.

Zimmer boarded the car at Dinwiddie street, in the city of Portsmouth, and one or two blocks further on came inside. In a quarter of an hour, during the period in which the car was traveling two miles, the conductor passed him four or five times, and on one occasion, when he was stooping over and blocking the aisle, he called to him in a jocular way, "Heads up in front!" The record also shows that

there was at least one vacant seat in the car which Zimmer could have been required to take.

This testimony was certainly sufficient to require the submission of the case to the jury, and from this evidence the jury were justified in inferring that Zimmer was in such an intoxicated condition that he was a source of danger and menace to other passengers on the car; that it was a reasonable inference to be drawn from his condition that just the accident which did happen might occur; and that the conductor either knew of his condition, or in the exercise of proper care ought to have known of it. The principles of law covering such a state of facts are well settled, and the high degree of care which the law imposes upon a conductor of a passenger car under such conditions made it the duty of the conductor in this case to exercise his authority and require the drunken or half drunken passenger to take the vacant seat, or else to take some position in the car where the danger to his fellow passengers would be lessened.

A conductor should not wait until a drunken passenger has committed some disturbing act before taking some action, but should take proper action commensurate with the probable danger whenever such passenger gives reasonable cause to believe that an accident is likely to happen. *Vinton* v. *Middlesex Railroad Co.*, 11 Allen (Mass.) 304, 87 Am. Dec. 714.

We find no reversible error in the proceedings.

*Affirmed.*