# Richmond

CLARA HAMRICK AND THE NATIONAL VALLEY BANK OF
STAUNTON, EXECUTOR OF THOMAS A. BELL,
DECEASED v. W. E. FAHRNEY.

November 12, 1931.

Present, Prentis, C. J., and Campbell, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Charles J. Churchman* and *S. L. Sinnott,* for the plaintiffs in error.

*Curry & Carter,* for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

The petitioners, Clara Hamrick and The National Valley Bank of Staunton, executor of Thomas A. Bell, deceased, who are hereafter called the defendants, are here complaining of a judgment in favor of W. E. Fahrney in an action for personal injury.

We shall not undertake to state in detail all of the testimony. We deem it sufficient to say that the testimony for the plaintiff, in substance, shows that he was traveling south on the Lee highway, a short distance north of the corporate limits of Staunton, and just as he passed the Fairview or Sandy Hollow road, which entered but did not cross the Lee highway, his car was violently struck and he was seriously injured by a car driven by Thomas A. Bell, now deceased, who was one of the copartnership composed

of Thomas A. Bell and Clara Hamrick, doing business under the name of Hamrick & Company. The Sandy Hollow road was an unimproved clay road which terminated at the Lee highway. The view of the plaintiff was partially, if not completely, obscured by an embankment, trees and other vegetation so that he could not see the car of defendants which struck him until just as it emerged from the side road. There is testimony tending to show that the car of the defendants, in violation of the statute (Code 1930, section 2145 [22]), entered the Lee highway at a rate of speed greatly in excess of five miles an hour, as limited by law, while the plaintiff was driving southwardly at a reasonable rate of speed, not exceeding twenty-five or thirty miles an hour. The side of plaintiff's car was struck with great force, at a point towards the rear, was turned and so diverted from its course that it ran violently into a bank on the west side of the Lee highway, fifteen or twenty feet south of the side road; while the car of defendants proceeded on its course well beyond that point. The plaintiff had three ribs broken and now stoops and suffers from curvature of the spine, diagnosed by the physicians as scoliosis of the spine, with marked limitation of movement in all directions.

On the contrary, the evidence for the defendants is to the effect, substantially, that the car driven by Bell had emerged from the side road into the Lee highway; had entered it very slowly; had straightened out going toward Staunton upon the extreme righthand side of the highway, with its right wheels traveling on the dirt shoulder, and that the plaintiff's car came up behind it, and in an effort to pass turned sharply to the right, or west, immediately in front of defendants' car, and that this was the sole cause of the collision.

As to the motion to set aside the verdict upon the ground that it is contrary to the law and the evidence, it

is then only necessary to say that the issues of fact were submitted to a jury, and that their verdict is conclusive here; so that the court did not err in refusing to set aside the verdict on this ground.

There are a number of assignments of error, some of them hardly more than repetitions, and we shall only discuss those which seem to us necessary in order to comprehend and determine the case.

Instructions 4 and 11, given for the plaintiff, are criticised. They read:

"4. The court instructs the jury that if they believe from the evidence in this case that the injury to the plaintiff was due solely to the negligence of Mr. Bell in the operation of the car of his firm, then the defendants are liable in damages to the plaintiff in this case and the jury should find a verdict in favor of the plaintiff for such damages, not exceeding the sum of $5,000.00, as they may fix and assess as fair and reasonable compensation for the injuries suffered by the plaintiff and in arriving at the damages sustained by the plaintiff, they will be governed in estimating the same by another instruction of the court.

"11. The court instructs the jury that if they believe from the evidence that the plaintiff is entitled to recover, they may, in estimating the damages to which the plaintiff is entitled, take into consideration the bodily injuries he sustained, his mental suffering, the pain that he underwent; the loss of time he sustained; the effect of the injuries he received on the health of the plaintiff; and his physical condition according to the degree and probable duration thereof, and as to whether the same is temporary or permanent; the inconvenience caused to the plaintiff by his injuries; the loss of earning capacity sustained by him as a result of his injuries; and any damages to his automobile; and assess his damages at such sum as they may think just

and proper under the evidence in this case, not exceeding the sum of $5,000.00 claimed in the notice."

■ It is claimed that after the introduction of the testimony and after the instructions were argued, the court allowed the plaintiff to be recalled, over the defendants' objection, to testify as to the damage to the automobile.

Such questions as this are within the discretion of the trial court. We think, in view of the facts of this case, that discretion would have been abused had the court refused to allow the introduction of this additional testimony.

■ It is also claimed, as to this, that inasmuch as the plaintiff testified that the repair bill was $30.00 and the specific claim in the notice was for $100.00 as damages to the automobile, and $4,900.00 for personal injury, the verdict for the full amount claimed, $5,000.00, is erroneous, because this testimony shows that the damages to the automobile were only $30.00. The fallacy of this seems to us quite apparent. It cannot be contended that when an automobile has been seriously damaged, as this one was, by a collision, the plaintiff's recovery should be strictly limited to the cost of the repairs necessary to permit its operation. The damages to a machine wrecked as this one was, under such circumstances, can only be estimated, and the evidence submitted is sufficient to support this claim for damages.

The argument as to instruction No. 11 proceeds upon the unsound theory that there was no proper evidence that the accident in question caused the injuries complained of by the plaintiff.

■ The plaintiff bases his claim to recover upon the injuries which he attributed to the collision—that is, three broken ribs and curvature of the spine. The testimony as to the original cause of the curvature of the spine leaves grave doubt upon the impartial mind. Whether this had

existed long previous to the accident, or was caused by the accident, is quite uncertain, but there seems little doubt that even if of long standing it was aggravated. The accused was twice examined by experts. Dr. Voshell, about four months after the plaintiff's injury, stated that it was not possible to determine whether the scoliosis or the strain arose from the accident. He was examined later by Dr. R. P. Bell, a witness for the defendants, in July or August, 1930, and he says that he then had curvature of the spine— that is, the spine was curved laterally, termed scoliosis, which means a lateral curvature of the spine. He expressed the opinion that it had existed for several years, but that he could not say this with certainty; that scoliosis cases are generally slow in developing; that it was unusual for it to come from an accident, the most common cause in his opinion being infantile paralysis. He also expresses the opinion that it would be impossible for him or the most skilled surgeon to tell the cause of the condition in which he found the plaintiff, and that it was possible for it to have come from the injury which he received, and that if, as he claimed and as some of the witnesses testified, he was in perfect health up to the time of the injury, his condition tended to indicate that his injury was the cause of that condition. This being the testimony, it cannot be said, as a matter of law, that the plaintiff's condition was neither caused nor aggravated by his injury. Therefore, there was nothing else for the court to do in that state of the testimony except to submit it to the jury by an instruction similar to instruction No. 11. We find no error in that instruction.

There is much argument in the brief for the defendants as to whether or not the injury is permanent, but this has slight bearing upon the legal questions presented to us. Whether the injuries inflicted at the time of the accident were permanent or temporary in their consequences, there

is nothing prejudicial in the instructions submitting the question of damages to the jury.

There is a complaint of instruction No. 8, which reads:

"The court instructs the jury that it was the duty of Mr. T. A. Bell in running the Hamrick & Company car, before attempting to run his car into the Valley pike, to have kept a reasonable lookout both to his right and to his left for approaching cars and this was a continuing duty up to the very time that he entered the State highway, the Valley pike, and to have kept the car under proper control and not to have run it over five miles per hour when entering the highway, and if the jury believe from the evidence that Mr. Bell failed to keep such reasonable lookout or failed to keep his car under control so as to be able to stop it before entering the State highway, the Valley pike, and ran it over five miles per hour, and that this failure on his part was the sole proximate cause of the accident complained of, then the jury should find a verdict for the plaintiff."

It is claimed that there was no proper evidence upon which this instruction could be based. We do not agree that this is true. There is testimony of witnesses that the speed of defendants' car was excessive under the circumstances, and the physical facts shown by the impact and the consequent damages to the car of the plaintiff, and that it was deflected from its southerly course so that it ran into the bank on the western side of the road, fully justified this instruction.

None of the other objections to the instructions raise any new questions or require discussion.

Another assignment of error is based upon the fact that the plaintiff's counsel, in closing his argument, commented, among other things, on the failure of the defendant, Clara Hamrick, or her son, Richard Hamrick

(connected with the business), to testify, saying in that connection that Bell doubtless, before his death, told his partner, Mrs. Hamrick, about the accident, saying that he was not to blame for it.

In passing we may say that the plaintiff and his companion in the car testified positively that Bell did at the time acknowledge that he was to blame, while other witnesses introduced by the defendants testified to the contrary with equal positiveness.

While that statement of counsel should not have been made, because there was no testimony in the case upon which it could have been properly based, we hold this inadvertence to be harmless, in view of the other testimony as to Bell's statements to which we have adverted. Bell died shortly after the accident from natural causes, we believe, but there is nothing to indicate that he ever discussed the matter either with his partner, Clara Hamrick, or her son, his associates in business. It is certainly true, we think, that under Code, section 6209, Bell's subsequent declarations relevant to the occurrence might have been admitted. The fact that the plaintiff testified in this case, and that he and one of his witnesses testified that Bell admitted he was at fault, certainly made his subsequent declarations to the contrary admissible, but it was not shown that he made any such declarations to either of his associates. While the failure of a party to an action to testify as to any pertinent facts, which he knows, may be the subject of adverse comment, this is based upon it appearing that the party knows such facts. Such adverse comment cannot be properly based, as it was here, upon a mere inference, however plausible.

There was a motion for a new trial upon the ground of after-discovered evidence, which the court overruled, and this is assigned as reversible error.

This motion is based upon the claim that during the trial

the attorneys endeavored to find some person familiar with the plaintiff's physical condition previous to the accident, but without success, but that after the trial the attorneys heard that two persons, employees of a drug store in Staunton, might know something about it, and might recollect plaintiff's condition prior to the accident. The affidavits of these two persons are filed. One of them is to the effect that he had noticed that the plaintiff walked in a stooping or bent position, much as a person who had back trouble, and that he did not recall whether the stooped or bent position became greater after the accident, but in fact he did not think that there was any change in this respect. The other of these persons said that "during the time I observed Dr. Fahrney in his visits to the store he always walked in a stooped or bent position much as a person who apparently had some kidney or back trouble. During the period that I saw Dr. Fahrney, from 1925 to 1929, I never saw any appreciable change in his condition but he always looked about the same."

That the motion was correctly overruled appears to us quite apparent. The rules which control the court upon such a motion have been frequently stated.

In *Pauley* v. *Commonwealth*, 151 Va. 518, 144 S. E. 361, 363, it is thus repeated: "(1) That the evidence must have been discovered since the trial; (2) it must be such as could not by the exercise of due diligence have been discovered before the trial terminated; (3) it must be material, and such as ought to produce a different result on the next trial; and (4) it must not be merely cumulative, corroborative or collateral."

The accident occurred in December, 1928. The case was not tried until March, 1931. Long before the trial it was known that the plaintiff claimed that the accident caused the injury to his spine. This scoliosis was observable before and at the time of the trial, and caused him to

stoop. It was the subject of two previous examinations by experts. He was examined with the knowledge of all interested, by physicians, in order to determine, if possible, the cause of his condition. During the trial his witnesses testified to his apparent perfect health and physical erectness before the accident, while some of the defendants' witnesses testified to the contrary. These two witnesses who were so found after the trial apparently lived in Staunton, and both had been employees at the drug store which the testimony shows the plaintiff frequented as a visitor and customer. The motion was properly overruled because by due diligence these additional witnesses certainly should have been discovered before the trial began—certainly before it ended. The evidence is not such as ought to produce a different result on the next trial; and it is merely cumulative, corroborative and collateral.

While in cases such as this, where the evidence is so hopelessly in conflict, there may always remain a question as to whether a proper result has been reached, our method of settling such controversies is by a due and orderly trial fairly conducted. This was such a trial, and we find no reversible error in the record.

*Affirmed.*