## Staunton

SAFETY MOTOR TRANSIT CORPORATION V. SADIE CUNNINGHAM.

September 21, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Woods, Chitwood, Coxe & Rogers,* for the plaintiff in error.

*Horace M. Fox* and *Worrell & Worrell,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Plaintiff recovered a verdict and judgment for $15,000, damages for personal injuries claimed to have been sustained as a result of a collision between a bus of defendant company, on which she was a passenger, and an automo-

bile driven by defendant, W. H. Scott. Safety Motor Transit Corporation and W. H. Scott, co-defendants, sought and obtained separate writs of error to the same judgment. As the errors assigned are different, we have disposed of them in separate opinions.

Safety Motor Transit Corporation assigns only two errors—the refusal of the trial court to set aside the verdict (1) because it was contrary to the law and the evidence, and (2) because the amount of the verdict was excessive.

Plaintiff is here with a verdict in her favor, hence we must regard as established all material facts which the jury, as reasonable men, might have found from the evidence. Guided by this rule, the evidence which the jury might have believed may be stated thus:

The accident occurred at the intersection of Chapman avenue and Thirteenth street in the city of Roanoke. These streets are approximately thirty feet wide from curb to curb. Chapman avenue extends east and west and Thirteenth street north and south. West of Thirteenth street Chapman avenue is further north than it is on the east side, making an offset of more than fifty per cent of the width of the street. The angle of intersection is more acute than a right angle. If the center line of Chapman avenue were projected westwardly across Thirteenth street it would intersect with the curb on Thirteenth street somewhat north of the north line of Chapman avenue west of this street. This is apparent from the attached plat.

Exhibit A
J.H. Morris

The bus, proceeding west on Chapman avenue, stopped before reaching the intersection for the purpose of letting off and taking on passengers. At this point plaintiff and a colored man got on. While the bus was standing still discharging or taking on passengers, W. H. Scott, proceeding in the same direction on Chapman avenue, passed to the left of the bus, traveling from fifteen to eighteen miles an hour. After passing the bus, and before reaching the intersection, he brought his automobile almost to a stop and turned to his right, north, along Thirteenth street. In the meantime, the driver of the bus had started forward and did not see Scott's car until it was just in front of him, when he immediately applied his emergency brakes and came to a sudden stop, the right end of his front bumper grazing the right rear bumper and fender of Scott's car. Both drivers got out of their machines and when they saw that no damage had been done to either proceeded on their respective routes.

Plaintiff testified that she had not taken her seat towards the rear of the bus before it moved forward. This threw her somewhat off balance, and while in this position the sudden stopping of the bus threw her to the floor. This fall caused or precipitated arthritis in the lower spine, thereby seriously impairing plaintiff's health, for which she sought damages in this action.

Defendant company contends that the bus driver, through no negligence on his part, was confronted by an emergency which made it necessary to stop suddenly in order to avoid a collision which might have resulted in more serious injury to plaintiff and other passengers on the bus. In defendant company's petition it is stated that this contention is based on uncontradicted evidence which establishes (1) that Scott gave no signal or warning of his intention to make a right turn; (2) that he did not look to see whether the bus was closely approaching before "cutting" to the right after passing the bus on the left; and (3) that he suddenly turned to the right, without

warning, not more than three feet in front of the moving bus.

The crucial question is, are these statements supported by the evidence? An analysis of all the testimony reveals two distinct versions of the accident. One is that given by the bus driver, and in some particulars corroborated by the testimony of other witnesses, which tends to support defendant company's contention; the other is that given by Scott, which is likewise corroborated in some particulars by other testimony. The latter version seems to have been accepted in part by the jury, as the verdict was against both defendants.

Not a single witness testified that Scott did not give the proper signal for the right-hand turn. The bus driver stated that he stopped his bus some eight or ten feet east of the intersection and three or four feet south of the north curb; that as he started the bus he looked to his left and Scott's car was not within his line of vision; that before he had gone more than six or eight feet Scott "whipped" right in front of the bus, probably running twelve to fifteen miles an hour; that he applied his emergency brakes and stopped his bus, but not before the left end of the front bumper scraped the right rear fender of Scott's car. He was asked, "Did you have any warning or any notice that the automobile was going to turn in front of you and going out Thirteenth, north?" and answered, "No, sir, I did not, it all happened so quick." He further testified that at the time of the collision he was looking straight ahead and saw Scott's car for the first time as it turned two, perhaps three, feet in front of him. Under this version, if Scott had given the signal the bus driver probably would not, or could not, have seen it in time to avoid an emergency stop. The question quoted and the answer thereto is all the evidence in the record which tends to show whether or not Scott gave the signal for the turn. This bit of evidence is far from convincing, and all that can be said of it is that the bus driver did not see any

signal given by Scott. This is not sufficient to establish that the signal was not given.

All the evidence clearly establishes that the bus driver, on seeing Scott's automobile, was suddenly confronted with an emergency and was compelled to act instantly in order to avoid a collision. The legal question involved is, did the jury, from all the testimony, have a right to find that he was negligent in failing to see Scott's car before it was some two or three feet in front of him? If so, the emergency was created, or induced, by his failure to keep a proper lookout. In considering this question, all the facts and circumstances disclosed must be given due weight.

On account of the offset in the intersection, it was difficult for this large bus, twenty-three feet long and eight feet wide, to make the turn to enter the avenue west of Thirteenth street. Scott and other witnesses testified that on this occasion the bus stopped from thirty to thirty-five feet east of the intersection and from six to nine feet south of the north curb of Chapman avenue, and that it was standing in this position when he passed. As the bus moved forward from this position it was necessarily headed somewhat to the left, or southwest, and as it approached the intersection it was continuously lessening the width of the traffic lane on the left. If Scott proceeded in a straight line and approached the intersection at right angles, then his line of travel would cross that of the bus at some point in, or near, the intersection. In other words, according to this version Scott's car was more or less in front of the bus.

Under these circumstances, and considering the high degree of care which defendant company owed to plaintiff, the jury had a right to find that if the driver of the bus had exercised a proper lookout he would have seen the automobile before he got within two or three feet of it, especially in the absence of evidence tending to show that Scott failed to give the proper signal for a right-hand turn. The defense of sudden emergency is not

available unless the party who invokes it is himself free from fault in creating the emergency.

Judge Gregory, in *Virginia Electric & Power Company* v. *Blunt's Adm'r,* 158 Va. 421, 440, 163 S. E. 329, 335, said: "Instruction E was an attempt to apply the sudden emergency doctrine to the motorman, and it was properly refused because if he was placed in a position where he was not required to act as a man of ordinary prudence would have acted, he placed himself in that position by failing to look out for and yield the right of way to the deceased." See, also, *Virginia & S. W. Ry. Co.* v. *Hill,* 119 Va. 837, 89 S. E. 895; *Lavenstein* v. *Maile,* 146 Va. 789, 132 S. E. 844; *Ritter* v. *Johnson,* 163 Wash. 153, 300 Pac. 518, 79 A. L. R. 1270.

The other assignment of error is stated thus: "The court erred in not putting the plaintiff on terms as to the remission under sections 6333 and 6335 of that portion of the verdict which is excessive."

Code, section 6333, provides for the correction of errors generally, on a judgment by default or bill taken for confessed, and for misprisions of the clerk, or clerical misprisions of the judge, where the judgment may be safely corrected in the manner prescribed by that section. It has no application to errors in the reasoning and conclusions of the court about contested matters. See *Shipman* v. *Fletcher,* 91 Va. 473, 22 S. E. 458; *Owen* v. *Owen,* 157 Va. 580, 162 S. E. 46.

Defendant fails to point out what "portion of the verdict * * is excessive." The uncontradicted evidence is that plaintiff was thirty-six years of age and prior to the accident, so far as she or her family physician knew, was in perfect health; that she did all of her household work —washing, ironing, cooking, cleaning—and otherwise cared for her family, which included her husband, several children and an invalid mother; that she had never had any symptoms of rheumatism, arthritis, or similar diseases prior to the accident; that immediately following the injury in question she developed soreness in her abdomen

and back. Her family physician was not satisfied with his own diagnosis and called in for consultation Dr. Powell, surgeon and physician for defendant company. She was taken to the hospital, where the doctors diagnosed her case as spinal traumatic arthritis, superinduced or precipitated by the fall in the bus.

The doctors testified that plaintiff had two or more infected teeth, from which arthritis frequently develops; that probably arthritis was latent in her body, and for that reason the injury from the fall precipitated the attack; that a complete recovery was problematical.

At the time of the trial, nearly twelve months later, she was still a semi-invalid, able to do but little of her household work. In view of this uncontradicted testimony, it cannot be said that plaintiff's condition was neither caused nor aggravated by her injury. See *Hamrick* v. *Fahrney,* 157 Va. 396, 161 S. E. 43.

Defendant company states its contention thus: "It is not contended that this septic condition, essentially contributing to the plaintiff's present ailment of arthritis, relieves the defendant of liability, but it is respectfully submitted that it constitutes a circumstance which should have been considered by the court as properly reducing the excessive damages awarded by the jury. Her present condition is not such as would naturally flow from the comparatively slight injury or trauma which she alleges the defendant inflicted."

The expert medical testimony was that external violence would exaggerate or precipitate arthritis where the infection is in the body, and that the injury to plaintiff was the direct cause of the attack and her suffering.

Of course defendant is not liable for any condition of plaintiff existing before the injury, or for anything that would have resulted to her from her condition independent of the accident. The doctors were unable to say whether the toxic condition of plaintiff would have developed into arthritis if she had not received the injury here in question. The case is within the general rule

stated in 8 R. C. L. 436, and quoted with approval by Judge Prentis in *Virginia Ry. & Power Co.* v. *Hubbard,* 120 Va. 664, 91 S. E. 618, 619, thus:

"It is a general rule that one who negligently inflicts a personal injury on another is responsible for all the ill effects which, considering the condition of health in which the plaintiff was when he received the injury, naturally and necessarily follow such injury. Hence a defendant's liability is in no way lessened or affected by reason of the fact that the injuries would not have resulted had the plaintiff been in good health, or that they were aggravated and rendered more difficult to cure by reason of the fact that he was not in good health."

While the verdict is large, it has been approved by the trial court and no reason is assigned why it should not be controlled by the general rule stated by Judge Chinn in *Colonna Shipyard* v. *Dunn,* 151 Va. 740, 145 S. E. 342, 350, and quoted with aproval by Judge Holt in *Lawson* v. *Darter,* 157 Va. 284, 160 S. E. 74, as follows: "The settled rule is that, as there is no legal measure of damages in cases involving personal injuries, the verdict of the jury in such cases cannot be set aside as excessive unless it is made to appear that the jury has been actuated by prejudice, partiality, or corruption, or that they have been misled by some mistaken view of the merits of the case."

We find no reversible error, and the judgment is affirmed.

*Affirmed.*

EPES, J., dissenting.