COURT OF APPEALS OF VIRGINIA

Present:    Judges Kelsey, Haley and Powell
Argued at Alexandria, Virginia

FAIRFAX COUNTY SCHOOL BOARD

                                                              OPINION BY
v.       Record No. 0981-09-4                    JUDGE D. ARTHUR KELSEY
                                                              JANUARY 12, 2010
AMANDA MARTIN-ELBERHI


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Michael N. Salveson (Andrea Zizzi; Littler Mendelson, P.C., on
> brief), for appellant.
>
> Joseph M. Caturano, Jr. (Colten Cummins Watson & Vincent P.C.,
> on brief), for appellee.


Amanda Martin-Elberhi received a total knee replacement as a result of a non-work-related medical condition. About a year later, she sustained an injury at work that aggravated her preexisting condition. Without differentiating her preexisting condition from the aggravation, the claimant's treating physician gave her a 37% lower left extremity impairment rating. The Virginia Workers' Compensation Commission awarded permanent partial loss benefits solely on the basis of this opinion. We reverse and remand for further factfinding by the commission.

I.

On appeal, we view the "evidence and all reasonable inferences that may be drawn from that evidence" in the light most favorable to the party prevailing before the commission. Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83, 608 S.E.2d 512, 517 (2005) (*en banc*).

The claimant's treating physician, Dr. Charles Ubelhart, performed a total knee replacement on the claimant's left knee in 2005. The claimant has never asserted the knee replacement was in any way caused by a work-related condition. In August 2006, the claimant fell at work injuring her recently reconstructed knee. In April 2008, Dr. Ubelhart wrote a letter

to the claimant's counsel stating the claimant's work-related accident resulted in "multiple contusions and impact upon her total knee replacement." After Dr. Ubelhart surgically repaired the damage caused by the fall, Martin-Elberhi eventually was "able to acquire comfortable range of motion" for the knee replacement. Dr. Ubelhart worried about the "possibility in the future that the patella prosthesis could deteriorate" but concluded, "Right now, all seems to be progressing very well."

In the penultimate paragraph of his letter, Dr. Ubelhart advised the claimant's counsel: "I would rate her disability at this point in time as 37% impairment of the lower extremity which extrapolates to 15% impairment of the whole person." Relying solely on Dr. Ubelhart's letter, the commission awarded the claimant permanent partial loss benefits based on a 37% impairment rating.

## II.

The employer argues on appeal that the commission erred as a matter of law because neither the treating physician nor the commission distinguished between the impairment rating attributable to the claimant's 2005 total knee replacement (a preexisting condition unrelated to the claimant's work) and the rating attributable to her 2006 aggravation injury (a compensable loss related to her work). We agree.

Under settled principles, an employee can recover a permanent partial loss award under Code § 65.2-503 only for an impairment caused by a work-related accident. When a work-related accident aggravates a preexisting condition, an employee can recover for the degree of impairment caused by the aggravation but not for any preexisting impairment unrelated to the work-related accident. By statute, "if an employee has a permanent disability" prior to the work-related accident, he is "entitled to compensation *only for the degree of incapacity* which would have resulted from the later accident if the earlier disability or injury *had not existed*." Code

- 2 -

§ 65.2-505(A) (emphasis added).  Any other conclusion would render the employer liable for a preexisting impairment that arose "in some other employment or in a non-occupational accident."  Noblin v. Randolph Corp., 180 Va. 345, 362, 23 S.E.2d 209, 216 (1942) (applying the statutory predecessor to Code § 65.2-505(A)).  The General Assembly "intended to hold the employer liable only for the amount of injury sustained by the employee in the conduct of his particular business."  Id.

So what is true in Virginia law generally[1] is equally true in workers' compensation law.  See Va. Fibre Corp. v. Moore, 17 Va. App. 691, 693, 440 S.E.2d 432, 434 (1994) (recognizing that Code § 65.2-505 excludes employer's liability for "pre-existing injuries that place the employee's disability at or above a defined level of compensability"), aff'd, 249 Va. 1, 452 S.E.2d 360 (1995); Mellon v. Tredegar Corp., VWC File No. 203-11-25 (Apr. 26, 2004) (holding an employer is not responsible for a "permanent impairment" associated with a preexisting condition).  This venerable principle recognizes the claimant, not the employer, alone bears the burden of proving causation.

In this case, the commission awarded the claimant a 37% lower extremity impairment rating without addressing whether it applied to the work-related aggravation injury (which the parties conceded was compensable) or the preexisting condition (which the parties conceded was noncompensable).  By failing to distinguish between the two, the commission made no holding on "the degree of incapacity which would have resulted from the later accident if the earlier disability or injury had not existed."  Code § 65.2-505(A).

---

[1] See also Bradner v. Mitchell, 234 Va. 483, 489, 362 S.E.2d 718, 722 (1987) (holding that a plaintiff can recover for the "exacerbation" of a preexisting condition, but not "for the preexisting condition itself"); State Farm Ins. Co. v. Futrell, 209 Va. 266, 271, 163 S.E.2d 181, 185 (1968) (reaffirming that a plaintiff cannot recover for "any pre-existing disability"); Ragsdale v. Jones, 202 Va. 278, 282-83, 117 S.E.2d 114, 118 (1960); Charles E. Friend, Personal Injury Law in Virginia § 13.3.6, at 318 (3d ed. 2003) ("Defendant is not liable for the

- 3 -

The claimant argues our reasoning relies on a cramped reading of the commission opinion. Implicit in the opinion, she argues, is the conclusion that her aggravation injury *wholly* caused her present impairment rating. If that were true, however, it would necessarily follow that the commission also implicitly concluded her total knee replacement caused no impairment whatsoever. That implied finding, if we assume it had been made, would inexplicably contradict the commission's longstanding practice of accepting the American Medical Association's impairment guidelines which call for a 37% lower extremity impairment rating attributable *solely* to a successful total knee replacement. See Va. Natural Gas, Inc. v. Tennessee, 50 Va. App. 270, 281, 649 S.E.2d 206, 212 (2007) (affirming commission's application of a 37% rating for a total knee replacement);[2] Martin v. Findlay Industries, Inc., VWC File No. 212-94-00 (2009) (applying 37% rating to a total knee replacement); Nichols v. City of Norfolk Health, VWC File No. 206-24-72, 2007 Va. Wrk. Comp. LEXIS 214, at **3-4 (2007) (same); Perkins v. Paramont Coal Corp., VWC File No. 187-95-91, 2005 Va. Wrk. Comp. LEXIS 969, at *4 (2005) (same). We think it inadvisable to impute to the commission an implied finding so wholly out of sync with its established jurisprudence.[3]

---

pre-existing condition itself, or for anything that would have occurred due solely to the pre-existing condition and independent of the defendant's act.").

[2] Va. Natural Gas, Inc. proves the point from the opposite direction. There, a non-work-related preexisting condition (arthritis) was aggravated by a work-related accident causing the need for a total knee replacement. We affirmed the commission's finding that a 37% impairment rating should be attributed *solely* to the successful knee replacement because no evidence suggested the preexisting condition had caused any "functional loss" to the claimant's leg. Va. Natural Gas, Inc., 50 Va. App. at 281, 649 S.E.2d at 212.

[3] The use by medical experts of the AMA impairment guidelines to calculate the impairment attributable to *successful* knee replacements is not unique to Virginia. See, e.g., Hale v. Vickers, Inc., 635 N.W.2d 458, 470 (Neb. Ct. App. 2001) (noting expert's reliance on the "AMA Guides to the Evaluation of Permanent Impairment, 4th edition" for assigning "a permanent partial disability of thirty-seven percent (37%) of the right lower extremity" for "a good result following his total knee replacement"); see generally Robert G. Rassp, Lawyer's Guide to AMA Guides & Cal. Workers' Comp. § 3.17 (2010 ed.) (explaining that under the

We thus reverse the commission's ruling and remand for further factfinding consistent with this opinion. In cases where, as here, the commission's express ruling on a dispositive point is too "unclear" for us to fairly infer an implied holding, we prefer to restate the governing legal principles and to permit the commission on remand to address the case anew. Bergmann v. L & W Drywall, 222 Va. 30, 32, 278 S.E.2d 801, 803 (1981). That is particularly true when we conclude the commission applied "an incorrect legal standard" and "truncated the factfinding task necessary under the correct legal standard." Dowden v. Hercules, Inc., 51 Va. App. 185, 197, 655 S.E.2d 755, 761 (2008) (*en banc*) (plurality opinion). In its discretion, the commission may provide the parties an opportunity to reopen the evidentiary record to specifically address the causation issue.

Reversed and remanded.

---

AMA Guides, "a 'good result' of the knee replacement" results in a 37% lower extremity impairment, a "fair result" has a "50% LE rating" and a "poor result" is given a "75% LE").