Present: All the Justices

MARSHELLO CARRINGTON, ADMINISTRATOR
OF THE ESTATE OF CARNELL CARRINGTON

OPINION BY
v. Record No. 180243                                          JUSTICE D. ARTHUR KELSEY
JULY 18, 2019

AQUATIC COMPANY, ET AL.

FROM THE COURT OF APPEALS OF VIRGINIA

In this case, the Court of Appeals affirmed a determination by the Workers'

Compensation Commission that Carnell Carrington was not entitled to temporary benefits for a

total disability caused by kidney failure unrelated to his employment. Agreeing with the

Commission and the Court of Appeals, we affirm.

I.

The Commission's determinations of fact are conclusive and binding on appeal, and thus,

we "construe the evidence in the light most favorable to the prevailing part[y] before the

Commission," *Jeffreys v. Uninsured Emp'r's Fund*, 297 Va. 82, 87 (2019), which, in this case,

was Carrington's former employer, Aquatic Company ("Aquatic").

So viewed, the evidence showed that Carrington had begun working for Aquatic in 1992.

At that time, he had a preexisting kidney disease that "was not disabling" and "did not inhibit"

his ability to perform his job. J.A. at 358. For many years thereafter, the disease required

routine medical care but still did not affect his ability to work. In 2006, Carrington received a

kidney transplant. After a period of recuperation, Carrington returned to work without any

restrictions. In 2013, Carrington injured his left arm at work. The Commission awarded him

medical benefits and temporary total-disability benefits for his arm injury. After surgery and a

period of recuperation, Carrington was cleared by his doctors to return to light-duty work in

November 2013.  At that time, Aquatic had full-time, light-duty work available for Carrington at his regular wages.

Carrington returned to work in this light-duty capacity until October 2014, when his kidney condition deteriorated severely.  His doctors concluded that this new condition rendered him totally disabled from performing any work.  After receiving this diagnosis, Carrington sought an award of continuing temporary total-disability benefits.  Carrington and Aquatic stipulated to the essential facts:  Carrington had been "unable to work" since October 2014 "due to polycystic kidney disease"; he had been "partially disabled" due to his earlier work-related arm injury; and, since October 2014, he could have been fully employed at Aquatic in a job "commensurate with his work-related light duty restrictions."  *Id.* at 22.  Carrington also conceded that he had not been disabled from work due to his preexisting kidney disease prior to October 2014.  *See id.* at 45.  Carrington agreed that it was then that the disease "manifested itself" as a disabling condition.  *See id.*

The Commission held that Carrington was not entitled to continuing temporary total-disability benefits.  It concluded that neither Carrington's preexisting kidney disease nor his kidney failure in October 2014 had any connection to his employment.  In addition, the Commission concluded that Carrington's arm injury was connected to his employment, but it did not render him totally disabled as evidenced by the fact that after his arm surgery, Carrington was able to return to light-duty work at Aquatic.  The sole cause of Carrington's total disability, the Commission concluded, was his kidney failure that was unrelated to his employment.

2

"Consequently, the suspension mandated by Va. Code § 65.2-510 would be triggered,"[1] the Commission ruled.  J.A. at 359.

In an unpublished opinion, the Court of Appeals affirmed the Commission's determination.  *See Carrington v. Aquatic Co.*, Record No. 0628-17-2, 2018 WL 502777 (Va. Ct. App. Jan. 23, 2018).  Carrington passed away in 2018, and his Estate substituted itself as the Appellant before this Court.

II.

On appeal, the Estate offers no contest to the Commission's finding that Carrington's kidney failure was not work-related, and thus, that the kidney failure alone could not result in an award of total-disability benefits.  The Estate argues, however, that the two-causes rule applies to the facts of this case.  *See* Appellant's Br. at 9-10.  This rule applies when "a disability has two causes:  one related to the employment and one unrelated," and thus, "[w]hen it is proven that the employment is a contributing factor to the disability, full benefits will be allowed."  *Bergmann v. L & W Drywall*, 222 Va. 30, 32 (1981) (per curiam); *see also* Lawrence J. Pascal, Virginia Workers' Compensation Law and Practice § 4.02[1][l], at 4-39 to -40 (4th ed. 2011).  Like the Commission and the Court of Appeals, we find the two-causes rule inapplicable here.

The two-causes rule articulated in *Bergmann* presupposes that the two causes (one compensable and the other not) combine to produce the *same* disabling condition and that the compensable cause arising out of "the employment is a *contributing* factor to the disability."

---

[1] Code § 65.2-510(A) states:  "If an injured employee refuses employment procured for him suitable to his capacity, he shall only be entitled to the benefits provided for in §§ 65.2-503 [for permanent loss] and 65.2-603 [requiring the employer to furnish certain medical attention], excluding vocational rehabilitation services provided for in subdivision A 3 of § 65.2-603, during the continuance of such refusal, unless in the opinion of the Commission such refusal was justified."

*Smith v. Fieldcrest Mills, Inc.*, 224 Va. 24, 28-29 (1982) (emphasis in original) (quoting

*Bergmann*, 222 Va. at 32). In *Bergmann*, for example, medical evidence showed that a worker

"suffered from a neurological disability caused by both his [work-related] injury and the non-

job-related illness." 222 Va. at 32. Similarly, in *Smith*, a worker was totally disabled by a

"respiratory ailment" caused in part by smoking and in "significant" part by the hazardous

ambient conditions of her employment. 224 Va. at 25-27. In both of these cases, we applied the

two-causes rule because there were two causes of the same disabling condition.

The two-causes rule does not apply to cases involving two causes that result in *dissimilar*

disabilities, as was the case here, when a partial disability caused by a work-related arm injury

(resolved by the availability of suitable, light-duty employment) was followed by a total

disability caused by non-work-related kidney failure. In *American Furniture Co. v. Doane*, we

explained:

> [E]mployment "suitable to the employee's capacity" means
> employment within the employee's residual capacity resulting
> from the industrial accident. The [Workers' Compensation] Act is
> based upon the premise that an employer is liable for the condition
> of an employee resulting from an industrial accident. But an
> employer is not liable for conditions not causally related to the
> employee's work.

230 Va. 39, 42-43 (1985) (alteration omitted). *See generally* Pascal, *supra*, § 6.03[2], at 6-23

(4th ed. 2011 & Supp. 2018). "An employer, therefore, is absolved of liability for compensation

if the employee refuses selective employment because of a physical condition unrelated to the

original industrial accident and arising since the accident." *Doane*, 230 Va. at 43.[2]

---

[2] In this respect, *Doane* is not truly an exception to the two-causes rule, as the Court of Appeals and the Estate suggest, *see Carrington*, 2018 WL 502777, at *3; Appellant's Br. at 10-12, 14, 19. *Doane* instead simply points out that the two-causes rule is inapplicable when only one cause is to blame for the claimant's total disability.

In its unpublished opinion in the present case, the Court of Appeals faithfully followed our precedent on this issue:

> When a non-work-related disability prevents a partially disabled employee from returning to his or her pre-injury work or from accepting selective employment, for purposes of the Workers' Compensation Act, the unrelated disability is not justification for the employee to refuse or not to perform selective employment. Thus, the inability of a disabled employee to do selective work due to an unrelated disability is equivalent to an unjustified refusal of selective employment.

*Carrington*, 2018 WL 502777, at *3-4 (alterations and citation omitted). This principle has long been understood and followed by the Court of Appeals:

> The rationale behind this principle is that when an employee's work-related disability has resolved itself to the point that the worker can return to gainful employment, he or she is required to do so. An employer is not responsible for a disabled employee who is no longer unable to return to gainful employment because of his or her work-related injuries, but is prevented from doing so for other reasons.

*Eppling v. Schultz Dining Programs*, 18 Va. App. 125, 130 (1994).

The Estate acknowledges this principle but slightly modifies it in an analytically significant manner. "[T]here are two causes of Mr. Carrington's disability," the Estate reasons: "partial disability attributable to a work-related left arm injury and total disability attributable to pre-existing polycystic kidney disease. Both conditions prevented Mr. Carrington from returning to his pre-injury duties." Appellant's Br. at 10. The flaw in this logic is in its conclusion.

It does not matter that either or both of Carrington's ailments kept him "from returning to his pre-injury duties," *id.* What matters is whether either injury (and, if so, which one) kept him from working at all — thus rendering him totally disabled. The undisputed facts resolve this question. Carrington's work-related arm injury did not prevent him from returning to full-time work, albeit in a less physically demanding job. Carrington's non-work-related kidney failure,

5

however, rendered him unable to perform any job. Thus, the two-causes rule does not govern this case because there was only one cause of Carrington's total disability: his non-work-related kidney failure.

Underneath the veneer of the Estate's argument is the premise that Aquatic should somehow be estopped from treating Carrington's kidney failure as a non-compensable cause because Aquatic hired him knowing that he had a preexisting kidney disease. That argument might be fair if Carrington's preexisting condition had partially disabled him at the outset of his employment with Aquatic and then his later work-related arm injury deprived him of any remaining capacity to work at all. Such a scenario would be akin to the egg-shell-skull doctrine recognized in both tort law[3] and in workers' compensation law.[4] But that is not the scenario in this case. As the Commission pointed out, Carrington "had no pre-accident restrictions associated with his longstanding kidney condition" during his many years of employment with Aquatic. J.A. at 360; *see also id.* at 45.

Workers' compensation law distinguishes between preexisting conditions that are solely responsible for a total disability and preexisting conditions that combine with a work-related injury to create a total disability. To police the boundaries of this doctrine,

---

[3] *See, e.g.*, *Bradner v. Mitchell*, 234 Va. 483, 489 (1987); *State Farm Mut. Auto. Ins. v. Futrell*, 209 Va. 266, 271 (1968); *Ragsdale v. Jones*, 202 Va. 278, 282-83 (1960); *Virginia Ry. & Power Co. v. Hubbard*, 120 Va. 664, 668-69 (1917). *See generally* Charles E. Friend, Personal Injury Law in Virginia § 13.3.6, at 318 (3d ed. 2003); 13 Peter Nash Swisher et al., Virginia Practice Series: Tort and Personal Injury Law § 3:31, at 111-12 (2018-2019 ed.).

[4] *See, e.g.*, *Combs v. Virginia Elec. & Power Co.*, 259 Va. 503, 511 (2000) (finding that the aggravation of a claimant's preexisting condition arose out of her employment because the preexisting condition "united with an actual risk of her employment to produce her injury"); *Ohio Valley Constr. Co. v. Jackson*, 230 Va. 56, 58 (1985) ("When an injury sustained in an industrial accident accelerates or aggravates a pre-existing condition, death or disability resulting therefrom is compensable under the Workers' Compensation Act."). *See generally* Pascal, *supra*, § 4.02[4][a], at 4-69 to -70 (4th ed. 2011 & Supp. 2018).

6

[t]here must be distinguished the situation in which the employee's story begins with a preexisting condition, encounters next a compensable injury, followed by deterioration or collapse. If this further progression stems from the compensable injury rather than from the preexisting condition, it will be compensable. But if the deterioration is merely a resumption of the progression of the condition predating the industrial injury, further damage is not compensable.

3 Arthur Larson et al., Larson's Workers' Compensation Law § 46.03[8], at 46-21 (2019) (footnote omitted).[5] Failing to distinguish between these differing scenarios would convert the Workers' Compensation Act "into a form of health insurance," *Doane*, 230 Va. at 42, and, as the Commission noted in its opinion, would encourage "the potential mischief of affording a license to refuse otherwise appropriate light duty work because a pre-existing benign, asymptomatic condition eventually deteriorates to the point of causing restrictions," J.A. at 360 n.4.

III.

Because the two-causes rule does not apply to this case, we affirm the judgment of the Court of Appeals.

*Affirmed.*

---

[5] In accordance with this doctrine, "an injury due to the natural progress of the disease itself will not warrant a finding that the injuries were due to an accident." *Liberty Mut. Ins. v. Money*, 174 Va. 50, 55-56 (1939) (citation omitted); *see also Christy v. Mercury Cas. Co.*, 283 Va. 542, 547 (2012) ("However, if an employee suffers from a pre-existing condition at the time of the covered accident, compensation will only be payable for expenses incurred if the accident 'accelerates or aggravates the pre-existing condition.'" (alteration and citation omitted)); *cf. Fairfax Cty. Sch. Bd. v. Martin-Elberhi*, 55 Va. App. 543, 545-46 (2010) (holding that an "employee can recover for the degree of impairment caused by the aggravation but not for any preexisting impairment unrelated to the work-related accident"). *See generally* Pascal, *supra*, §§ 4.02[4][a], 5.07, at 4-69 to -70, 5-16 to -17 (4th ed. 2011 & Supp. 2018); 15 Virginia Practice Series: Workers' Compensation § 6:5, at 48-49 (2018 ed.).