## Richmond

E. Gerald Tremblay, Trustee v. State Highway Commissioner of Virginia.

September 1, 1971.

Record No. 7552.

Present, All the Justices.

*Lloyd T. Smith, Jr.* (*Tremblay, Colmer and Smith,* on brief), for appellant.

*Richard K. C. Sutherland,* Assistant Attorney General; *Charles R. Haugh* (*Andrew P. Miller,* Attorney General; *Stuart H. Dunn,* Assistant Attorney General; *Gordon and Haugh,* on brief), for appellee.

Carrico, J., delivered the opinion of the court.

The State Highway Commissioner of Virginia (hereafter, the Highway Commissioner) instituted this eminent domain proceeding for the purpose of ascertaining the amount of compensation to be paid E. Gerald Tremblay, Trustee (hereafter, the landowner), for certain property taken for the construction of Interstate Highway 64 in Albemarle County. Commissioners were appointed by the

court, and they returned a report awarding $31,700 for the land taken and $30,710 for damages to the residue. The award was less by $38,202 than the deposit previously paid to the landowner, and the court, in its final order, entered judgment against him for the excess amount. The landowner was granted a writ of error.

The record shows that E. Gerald Tremblay, as trustee for Jefferson Lake, Incorporated, held title to an undeveloped tract of land containing 107 acres near Charlottesville. The right-of-way taken by the Highway Commissioner consisted of a 32-acre parcel running the length of the 107-acre tract. As a result of the take, the remaining land was split into three parcels, one lying to the north of the right-of-way and the other two to the south.

At trial, the parties joined issue on what was the highest and best use of the property before the take and the value thereof as related to such potential use. The Highway Commissioner presented expert testimony showing that the highest and best use was for "investment holding" with the expectation that the owner would "get an increase in value over a period of years," meanwhile devoting the land to agricultural purposes. The values assigned by the Highway Commissioner's witnesses ranged from $900 to $940 an acre. The landowner, on the other hand, produced testimony showing that the highest and best use of the property was for residential development, with valuations ranging from $1500 to $1750 per acre.

In attempting to justify their valuations, the witnesses for both the Highway Commissioner and the landowner relied upon sales of other property in the area. The rulings of the trial court with respect to two such sales are the bases of assignments of error by the landowner which, in our opinion, have merit.

Walter Hash, an expert witness called by the Highway Commissioner, testified that a tract of land containing 71.88 acres had sold for $31,000 or $430 an acre. On cross-examination, the witness admitted that the "property was sold at auction." When asked "whether that was a force sale or not," he replied that "it was to liquidate [an] estate." Counsel for the landowner then requested the court to instruct the commissioners to disregard the sale because it "was not an ordinary course sale" and was "not an indication of a fair market value." The court refused the request.

█ This court has not squarely decided the question whether evidence of sales at public auction of other property is admissible as tending to show the market value of land which is the subject of eminent domain proceedings. We did, in *Kornegay* v. *City of Rich-*

*mond,* 185 Va. 1013, 1026, 41 S.E.2d 45, 51 (1947), quote from a New York case the statement that "fair market value" does not mean "auction value." But we did not have there the question of the admissibility of evidence relating to auction sales.

We start with the basic proposition that in eminent domain proceedings the landowner is entitled to just compensation for land taken and that such compensation is measured by the fair market value of the property. Market value is the price which one, under no compulsion to sell, is willing to take for property and which another, under no compulsion to buy, is willing to pay.

The rationale for the admission of evidence of sales of property comparable to that being condemned is that because the properties are similar, their values would also be similar. But since the value of the condemned property must be determined by the price which would be agreed to by willing parties, there is no basis for just comparison if the other property has been sold under certain forced circumstances.

In many sales at auction, there is present an element of legal compulsion which negates the idea of a free and voluntary transaction and which rebuts the probability that fair market value has been paid and received. This necessitates a rule, which we now adopt, excluding evidence of sales at auction under foreclosure proceedings or similar forced circumstances.

Doubtless, however, there are other sales at auction where the element of compulsion is lacking. In a given case, it might be shown that the circumstances under which the property was sold were free and open and produced a sale price reflecting market value. If these elements of voluntariness and fairness can be shown to the satisfaction of the trial court by the party offering the sale, upon whom the burden rests, in a hearing conducted out of the presence of the commissioners, then evidence of such a sale should be admitted.

Here, the alleged comparable sale relied upon by the Highway Commissioner was a sale at auction "to liquidate [an] estate." Such a sale is not necessarily excluded under the forced circumstances rule. 5 *Nichols on Eminent Domain* § 21.32 (rev. 3d ed. 1969). But since the Highway Commissioner did not show the voluntariness and fairness of the sale, the commissioners should have been instructed to disregard the evidence relating to the transaction.

The other sale in issue was sought to be introduced by the landowner. He called James A. Nunnally as an expert witness and attempted to show by him that University Inn, Incorporated, had

purchased from E. G. Watkins a tract containing 72.153 acres near the path of proposed Interstate Route 64. Upon objection by counsel for the Highway Commissioner, evidence of the sale was ruled inadmissible, the court stating that it would take judicial notice of the fact that at the time of the sale, the route of the new highway "was committed."

The rule is that "where the sale price [of other property] reflects an important enhancement of value because of the building of the project which has prompted the taking, the sale is not admissible." 5 *Nichols on Eminent Domain* § 21.31 [2], at p. 21-81 (rev. 3d ed. 1969). But when the court made its exclusionary ruling in this case, nothing appeared to disqualify the transaction in question as a comparable sale. The circumstances surrounding the sale were certainly not matters of which the court could take judicial notice. There should have been further inquiry, and unless the Highway Commissioner had shown by cross-examination of the landowner's witness or by direct evidence that the other property had been enhanced in value by the highway project, evidence of the sale should have been admitted.

There are two other questions raised by the landowner's assignments of error which, because there must be a retrial of the case, would ordinarily require consideration. However, in view of the state of the record on appeal, we cannot decide either question.

The first matter involves two maps which the trial court admitted as exhibits, allegedly depicting the extent of flooding in low areas of the subject property bordering Moore's Creek. One map was apparently prepared from a photograph appearing in a local newspaper at the time of a flood in 1955 and taken at a location downstream from the property in question. The second map was prepared from information shown on the first. However, several witnesses testified, without objection, to the extent of flooding on the landowner's property, and we cannot tell whether the maps show a greater area to be "flood prone" than was testified to by the witnesses. So we cannot say that admission of the exhibits was prejudicial.

The other matter concerns an instruction offered by the landowner and refused by the trial court. The instruction, however, was not designated for printing and it does not appear in the printed record. Therefore, we will not notice the alleged error. *Powell* v. *Nichols*, 209 Va. 654, 661, 166 S.E.2d 243, 248 (1969); *Gaumont* v. *Highway Commissioner*, 205 Va. 223, 225, 135 S.E.2d 790, 791

(1964). In any event, we have examined the instruction and find that even had it been printed, we still would be unable to say that the trial court erred in refusing it. Neither the evidence purportedly necessitating the instruction nor the landowner's objection to the trial court's ruling on the pertinent principle of law is sufficiently complete to warrant decision at this time.

For the reasons previously stated, the judgment of the trial court will be reversed and the case remanded for a new trial.

*Reversed and remanded.*