## Richmond

STATE HIGHWAY COMMISSIONER OF VIRGINIA V.
FRANK B. EASLEY AND JOAN B. EASLEY.

August 28, 1974.

Record No. 730889.

Present, All the Justices.

*John J. Beall, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General; Walter A. McFarlane, Assistant Attorney General; Francis A. Cherry, Jr., Assistant Attorney General, on brief), for appellant.*

*Frank M. Slayton (Jesse R. Overstreet, Jr.; Vaughan, Slayton & Bennett, on brief), for appellees.*

Cochran, J., delivered the opinion of the court.

The State Highway Commissioner appeals from orders entered by the trial court on June 18, 1973 and October 16, 1973, in condemnation proceedings instituted by the Commissioner against Frank B. Easley and Joan B. Easley to acquire a small portion of their lands for the improvement of U. S. Route 58.

The Easleys own property fronting on the north side of Route 58 in Mecklenburg County. The property is divided into two parcels by State Route 1125, a north-south road which intersects Route 58.

Parcel 052 on the northwest corner of the intersection contains a service station, a drive-in restaurant and a parking lot. Prior to the condemnation proceedings the parking lot abutted directly on Route 58 and the parcel had direct access to the highway along the parcel's property line of 185 feet. Parcel 053 on the northeast corner of the intersection contains a laundromat, other buildings and a parking lot. Prior to the condemnation proceedings this parcel had access to Route 58 along the parcel's property line of 150 feet, interrupted by grass plots.

The Commissioner undertook to improve Route 58 by placing a median strip between the two eastbound and the two westbound lanes. To acquire the necessary land he instituted proceedings to condemn a 2-foot wide strip of the Easleys' land, together with some area at the intersection to round off the corners. The land taken consisted of .02 acre from Parcel 052, including about 20 square feet of the tar and gravel driveway or parking lot; .014 acre from Parcel 053, including 91 square feet of a gravel parking lot; and a .001 acre slope easement.

The Commissioner also undertook to regulate access to the two parcels by placing curbing along the highway right of way with two openings, one 50 feet wide and one 30 feet wide, to provide access to Route 58 from Parcel 052, and two openings, each 30 feet wide; to provide access to Route 58 from Parcel 053.

At trial each side presented one witness to testify as to valuation and damages. The witness for the Commissioner testified that the total value of the land taken was $511 and that there was no compensable damage to the residue of either parcel. The Easleys' witness testified that the total value of the land taken was $1,050. He further testified, over objection, that there was damage to the residue of Parcel 052 of $2,000 resulting from loss of driveway and of $3,000 resulting from limitation of access caused by installation of the new curbing, and that there was damage to the residue of Parcel 053 of $5,000 resulting from loss of parking area and of $10,000 resulting from limitation of access caused by the new curbing. The trial court apparently admitted the evidence of damage from loss of access on the theory that such damage was compensable if it occurred conjointly with a taking of property.

The condemnation commissioners filed their report on December 4, 1972, in which they awarded $800 for the land taken and $18,140 for damages to the residue. On December 6, 1972, the Commissioner filed his exception to the commissioners' report on the ground that the trial court had improperly admitted as evidence of damage the reduced access of the parcels to Route 58. By order entered May 26, 1973, the trial court overruled the exception, noted the Commissioner's exception to the ruling, and confirmed the report of the condemnation commissioners.

On June 14, 1973, at the request of counsel for the Commissioner, the trial court ordered the transcript to be filed as part of the record as provided by Rule 5:9(a). On June 18, 1973, the trial court entered what purports to be a final order approving the commissioners' report, confirming title in the Commonwealth, ordering payment to the Easleys of the excess of the award over the amount deposited by the Commissioner, directing recordation of the proceedings in the clerk's office and payment of costs, including compensation to the commissioners, and ordering that the cause be stricken from the docket. The original order is entered on a printed form prepared for use in State Highway Commissioner condemnations under Title 33 of the Code before Title 33 was replaced by Title 33.1 in 1970. A printed portion of the order incorrectly recites that no exceptions had been filed to the commissioners' report. The order also incorrectly states that the commissioners' report was filed on December 4, 1971, rather than on December 4, 1972, and that interest on the excess of the award over the amount deposited by the Commissioner should be computed at 5% per annum, rather than at 6% as required by Code §§ 33.1-128 and 6.1-318 (1970 Repl. Vol.). Counsel for the Commissioner endorsed and requested entry of the order, but it was not endorsed by counsel for the Easleys, and did not contain any certificate showing notice to and service on them.

On July 5, 1973, the Commissioner filed his notice of appeal and assignments of error and mailed a copy thereof to counsel for the Easleys.

On October 12, 1973, the Commissioner filed two motions with the trial court. The first asserted that the June 18, 1973, order was invalid because it was not endorsed by counsel for the Easleys and asked that a valid final order be entered from which the Commissioner could perfect his appeal. The second,

designated "Motion pursuant to § 8-348 [1] and in nature of a writ coram vobis", moved the trial court to correct the errors in the order of June 18, 1973. The court, over the Commissioner's objection, ruled that the order of June 18, 1973, was a valid final order. The court further held, however, that the final order was correctable under Code § 8-348 and on October 16, 1973, entered a *nunc pro tunc* order incorporating into the order of June 18, 1973 the corrections sought by the Commissioner. In addition to correcting the date of the award, the interest rate payable on the excess of the award, and the incorrect recital as to exceptions to the commissioners' report, the order deleted the language striking the cause from the docket, noted the Commissioner's exception to the order and continued the cause on the docket. The Easleys objected to the *nunc pro tunc* order on the grounds that the order of June 18, 1973, could not be amended more than 21 days after entry, Rule 1:1, and that the recitation therein that no exceptions had been filed was not subject to correction under Code § 8-348.

The Commissioner's contention that the June 18, 1973, order was not a valid final order because it had not been endorsed by opposing counsel is without merit.

Rule 1:13 provides in pertinent part:

"Drafts of orders and decrees shall be endorsed by counsel of record, or reasonable notice of the time and place of presenting such· drafts together with copies thereof shall be served by delivering or mailing to all counsel of record who have not endorsed them. Compliance with this rule . . . may be modified or dispensed with by the court in its discretion."

The Commissioner relies on *Cofer* v. *Cofer*, 205 Va. 834, 836, 140 S.E.2d 663, 665 (1965), which held that orders entered in violation of Rule 1:13 are void, unless the trial court could

---

[1] Code § 8-348 (1957 Repl. Vol.) provides in pertinent part:

"[A]ny court, or judge thereof in vacation, in which is rendered a judgment or decree in a cause . . . wherein there is in a pleading or in the record of the judgment or decree any mistake, miscalculation, or misrecital of any name, sum, quantity, or time when the same is right in any part of the record or proceedings, or when there is any verdict, report of a commissioner, bond, or other writing whereby such judgment or decree may be safely amended . . . may, on the motion of any party, amend such judgment or decree according to the truth and justice of the case. . . . Every motion under this section shall be after reasonable written notice to the opposite party, his agent or attorney in fact or at law, and shall be within three years from the date of the judgment or decree."

properly exercise its discretion to dispense with the requirements. In *Cofer* the trial court entered a default judgment against an ex-wife permitting her divorced husband to reduce support payments for their children in her custody. We held that the trial court could not properly dispense with the requirements of Rule 1:13 because to do so would prejudice the rights of infants who had not been effectively represented.

The present case is distinguishable from *Cofer*. Unlike Mrs. Cofer, the Easleys have made no objection to the entry of the order without notice to their counsel. As Rule 1:13 is designed to protect parties without notice, failure to comply with the rule prejudices only the rights of such parties. The Commissioner, whose counsel induced the violation of Rule 1:13, has no standing to assert that the order is void because of that violation, or that the trial court, in its discretion, could not properly have entered the order without requiring compliance with the rule. So the order of June 18, 1973, was a valid final order.

■ The Easleys contend that the final order, having recited that no exceptions had been taken to the commissioners' report, and having failed to note any exception to entry of the final order, precluded the Commissioner from appealing. We do not agree. Rule 5:7 [2] contains no requirement that formal exceptions, or the absence thereof, be stated in the final order. Nor is such a requirement implicit in the purpose of Rule 5:7, which is to avoid unnecessary appeals by affording the trial judge an opportunity to rule intelligently on objections. *Woodson* v. *Commonwealth*, 211 Va. 285, 288, 176 S.E.2d 818, 820 (1970), *cert. denied*, 401 U.S. 959 (1971). In the present case the trial judge was fully apprised of the Commissioner's objections and the reasons therefor, on which objections he issued considered rulings. Counsel for the Commissioner objected to all testimony basing damages on loss of access to the parcels, and he stated the grounds for these objections. He also moved the trial court without success to strike this evidence after the testimony had been admitted, and he repeated his objection and the reasons therefor in the

---

[2] Rule 5:7 provides:

"This Court will not notice any objection requiring a ruling of the trial court unless the ground of objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice. Only errors assigned in the notice of appeal and assignments of error will be noticed by this Court and error not so assigned will not be admitted as a ground of a reversal of a decision below."

exception that he filed to the commissioners' report. Subsequently, the basis of the exception was embodied in the assignments of error timely filed with the Commissioner's notice of appeal. Hence, the recitation that no exceptions to the commissioners' report were filed, inadvertently incorporated in the final order, does not alter the fact that an exception was filed, argued and overruled, to which ruling the Commissioner excepted, as shown in the order of May 26, 1973.

The Easleys maintain, however, that the Commissioner improperly sought to change his stated position by appealing from the order of June 18, 1973, when that order reflected the decision of his counsel to abandon any objections to the termination of the proceedings. So far as the record shows, the Easleys did not rely to their detriment on the recitation in the order, if, indeed, they were aware of it, and the notice of appeal and assignments of error filed on July 5, 1973, warned them that the Commissioner was determined to pursue the litigation. Although the actions of counsel for the Commissioner were inconsistent, the record shows no resulting prejudice to the rights of the Easleys that would preclude the Commissioner from appealing after having had the trial court enter an order that indicated that no appeal would be sought. *Cf. Thrasher* v. *Thrasher*, 210 Va. 624, 172 S.E.2d 771 (1970); *McLaughlin* v. *Gholson*, 210 Va. 498, 171 S.E.2d 816 (1970).

Moreover, under the provisions of Code § 8-348 the trial court had power to correct clerical errors brought to its attention within three years after the final judgment. *Council* v. *Commonwealth*, 198 Va. 288, 94 S.E.2d 245 (1956). *See New York Life Ins. Co.* v. *Barton*, 166 Va. 426, 432-33, 186 S.E. 65, 68 (1936); *Safety Transit* v. *Cunningham*, 161 Va. 356, 364, 171 S.E. 432, 435 (1933); *Shipman* v. *Fletcher*, 91 Va. 473, 488-89, 22 S.E. 458, 463-64 (1895).

The Easleys concede that the trial court could properly correct clerical errors in the June 13, 1973 order by the October 16, 1973 order. They insist, however, that, among other errors improperly corrected, the erroneous statement in the June 18, 1973 order that no exceptions had been filed to the commissioners' report was not the kind of error that could be corrected under the provisions of Code § 8-348. But the statement that no exceptions had been filed was neither a finding of fact nor a conclusion of law, but was merely an erroneous recital of what took place

during the proceedings. The exception to the report of commissioners filed with the trial court, as well as the decree of May 26, 1973, overruling the same, provided a sufficient basis for safely correcting the final order in this respect, and the correction was properly made under Code § 8-348.

We will assume, without deciding, that the other corrections, except for the date of the commissioners' report and the interest rate on the award, were beyond the purview of Code § 8-348 and were improperly made. They are also immaterial. We will therefore consider the June 18 order to have been properly corrected by the October 16 order only to the extent of showing the correct date of the commissioners' report, the correct rate of interest, the fact that exceptions to the commissioners' report had been filed and overruled, and that the Commissioner had excepted to this ruling of the trial court. As thus corrected the June 18 order was appealable and the Commissioner has timely filed his petition for appeal as well as his notice of appeal and assignments of error, so that we may consider the case on its merits.

■ The trial court erred in permitting the commissioners to consider as an element of damages the reduction in access of the parcels to Route 58. *See generally* 2A Nichols on Eminent Domain § 6.4443(4) (3d ed. 1970). An abutting landowner's right of access to a public road is subordinate to the police power of the state reasonably to control the use of streets so as to promote the public health, safety, and welfare. *Wood* v. *Richmond*, 148 Va. 400, 138 S.E. 560 (1927). In that case, we held that removal of a filling station driveway was not a compensable taking of property.

The same principle applies when regulation of access occurs conjointly with a compensable taking of property. *See Highway Commissioner* v. *Howard*, 213 Va. 731, 195 S.E.2d 880 (1973), where we held that evidence of circuity of access caused by the installation of a median strip on a four-lane highway could not be considered in assessing damages to the residue of property taken for widening the right of way. In either case the governing principle is that the owner of property abutting a public road has no right to compensation when the state, in the exercise of its police powers, reasonably regulates the flow of traffic on the highway. And the burden is on him who assails the action of the Commissioner to show that the Commissioner acted unreasonably. *Id.*

In the present case there was no evidence that the openings in the curbing would not provide the Easleys with reasonable access to Route 58. Hence, in admitting evidence of damage from limitation of access caused by installation of curbing the trial court committed error. Accordingly, the judgment order of June 18, 1973, as amended by the order of October 16, 1973, is reversed and the case is remanded to the trial court for a new trial.

*Reversed and remanded.*

Carrico, J., dissenting.

I disagree with the majority that the trial court had power under Code § 8-348 to amend the order of June 18, 1973, to show that exceptions had been filed to the commissioners' report. So far as we know, the failure of the order to recite the filing and overruling of exceptions may have resulted from the deliberate decision of the then counsel for the Highway Commissioner to abandon the exceptions previously filed. But whether this was the case, the possibility that it was the case amply demonstrates the policy reason that Code § 8-348 should be limited, as its language clearly indicates, to permit amendment of a judgment or decree to correct only a mistake, miscalculation, or misrecital of a *name, sum, quantity*, or *time.*

Code § 8-348 is the only possible source of the trial court's power to amend the June 18 order. Because, in my view, the Code section does not bestow power to make the type amendment at issue in this case, I would hold that the attempted correction was a nullity; that the situation must be viewed as though no exceptions were filed; and, therefore, that the June 18 order was not appealable. Hence, I would dismiss the appeal. *State Highway Commissioner* v. *Fairmac Corporation,* 212 Va. 8, 181 S.E.2d 605 (1971).

Snead, C.J., joins in this dissent.