PRESENT:  All the Justices

HOOKED GROUP, LLC

                                     OPINION BY
v.  Record No. 190764                JUSTICE STEPHEN R. McCULLOUGH
                                      May 28, 2020

CITY OF CHESAPEAKE

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Randall D. Smith, Judge

Hooked Group, LLC, whom we will refer to as the Landowner, owns a property zoned

for commercial use in the City of Chesapeake.  Previously, the property was accessible from two

roads, but in 2017 the City closed one of them to all but emergency vehicles.  The Landowner

filed a declaratory judgment action, claiming that the closure constituted a taking that entitled it

to compensation.  The City filed a demurrer, arguing the closure was an exercise of its police

power and did not constitute a taking because the property retains access through the other road,

a major thoroughfare.  The trial court agreed with the City and dismissed the case.  The

Landowner appeals from this decision.  For the reasons discussed below, we will affirm the

judgment of the trial court.

BACKGROUND

The Landowner owns a parcel of property zoned for commercial use in the City of

Chesapeake.  The property has road frontage along Callison Drive and Battlefield Boulevard and

it initially had two access points, one on Battlefield Boulevard and the other on Callison Drive.

In 2017, the City Council for the City of Chesapeake adopted an ordinance closing the

portion of Callison Drive that abuts the property to all non-emergency vehicular traffic.  The

ordinance states that the entrance from Callison Drive had been chained for many years.[1]  The

---

[1] In addition to the pleadings, the record contains the ordinance of the City of Chesapeake
ordering the closure of Callison Drive and a map of the area.

stated purpose of the ordinance was that this closure "will promote the public purposes of protecting the public health, safety and welfare, including without limitation, the restriction of commercial traffic on minor residential streets for public safety purposes and the preservation of the residential character of the neighboring subdivisions." The ordinance effectively closes access to the Landowner's property to and from Callison Drive.

The Landowner filed a petition for declaratory judgment seeking a declaration that the City's elimination of direct access from the property to Callison Drive constituted a taking of its property without just compensation. The petition asked the trial court to empanel jurors to determine the compensation owed to the Landowner. The Landowner did not allege that it owned a private easement of access to Callison Drive. Instead, it alleged that it possessed an easement for direct access "as a property owner abutting Callison Drive." The Landowner alleged that the Callison Drive entrance "was necessary to serve as a secondary ingress or egress" to the property, and that the closure of the Callison Drive entrance "has had a substantial negative effect on the value and highest and best use of [its] property."

The City filed a demurrer, asserting that the Landowner's petition failed to state a claim for inverse condemnation. The trial court heard argument and sustained the demurrer, concluding that although the Landowner had sufficiently pleaded a property right of access from the property to Callison Drive, it had failed to plead that this right was taken or damaged because "the petition admits that access to the property still exists from Battlefield Boulevard . . . [such that] there is not a complete extinguishment of access to the property," and a "necessary prerequisite to have the trier of fact consider whether or not the property has been damaged is a complete extinguishment and termination of all access to an abutting road." The trial court denied a motion to reconsider and this appeal followed. In denying the motion to reconsider, the

2

circuit court characterized Battlefield Boulevard as a "major public highway."

We granted the Landowner an appeal. It assigns the following error:

> The trial court erroneously sustained the City's demurrer. The City took the landowner's easement for ingress/egress by extinguishing the property's direct access to Callison Drive. This action took a property right and damaged the remaining property without just compensation, violating Art. I, §11 of the Constitution of Virginia.

ANALYSIS

> A demurrer tests the legal sufficiency of a pleading and can be sustained if the pleading, considered in the light most favorable to the plaintiff, fails to state a valid cause of action. We consider as admitted the facts expressly alleged and those which fairly can be viewed as impliedly alleged or reasonably inferred from the facts alleged.

*Welding, Inc. v. Bland County Serv. Auth.*, 261 Va. 218, 226 (2001).

The Landowner argues that, under our precedent, it is entitled to compensation for the closure of Callison Drive. It further argues that the 2012 amendments to Article I, § 11 of the Constitution of Virginia and accompanying legislation entitle it to relief. We address each argument in turn.

I.    POLICE POWER AND TAKINGS UNDER OUR PRECEDENT.

Under our federalism, the police power is essentially the inherent power of sovereign state governments "to enact laws 'to promote the health, peace, morals, education[,] and good order of the people.'" *Elizabeth River Crossings OpCo, L.L.C. v. Meeks*, 286 Va. 286, 321 (2013) (quoting *Mumpower v. Housing Auth. of Bristol*, 176 Va. 426, 440 (1940)). Local governments can exercise a police power, "derived by legislative authority, to so control the use of the streets as to promote the safety, comfort, health and general welfare of the public." *Wood*

3

*v. City of Richmond*, 148 Va. 400, 406-07 (1927).  The City of Chesapeake exercised this police power to close Callison Drive.

When the state or local government exercises its police power to "reasonably regulate[] the flow of traffic on the highway," ordinarily, "the owner of property abutting a public road has no right to compensation."  *State Hwy. Comm'r v. Easley*, 215 Va. 197, 203 (1974).  For example, we have held that "an abutting landowner cannot recover damages for interference with his right of access by the installation of a median strip on a four-lane highway."  *State Hwy. Comm'r. v. Howard*, 213 Va. 731, 732 (1973).  Similarly, we have held that a non-abutting landowner is not entitled to damages for the closing of nearby streets in the construction of a public park.  *City of Lynchburg v. Peters*, 156 Va. 40, 46 (1931).

Nevertheless, the exercise of that power can constitute a taking under certain circumstances.  The exercise of the police power must be balanced with the right landowners have to gain access to public streets from their property.  *See, e.g.*, *Wood*, 148 Va. at 406-07.  Landowners are not entitled to access their property from a specific location; rather, they are entitled only to "reasonable and adequate access."  *See Fugate v. Nettleton*, 213 Va. 26, 27 (1972) (holding that after property is dedicated and accepted for use as a public highway, the owner of the property is "only entitled to reasonable and adequate access"); *State Hwy. & Transp. Comm'r v. Dennison*, 231 Va. 239, 246 (1986) (approving a jury instruction which stated that "the owner of land abutting a public highway is only entitled to reasonable access to his property").

In *State Highway & Transportation Commissioner v. Linsly*, 223 Va. 437 (1982), the owner of commercial buildings that fronted on an existing highway sought compensation when access to the property changed from direct access to a highway to a limited access via a new

4

service road. We concluded that "the extinguishment of easements of abutting landowners upon the conversion of a conventional highway into a limited access highway," i.e. when access to a property directly from the highway was downgraded to access indirectly via a service road, was compensable. *Id.* at 443.

In *Dennison*, the property had two access points. One point of access was to a two-lane highway and the other was to a four-lane road. This four-lane road was divided by a median, but there was an opening in the median to turn into the property. 231 Va. at 241, 245. The take eliminated access to the property from the four-lane road. *Id*. at 245. We concluded that the factfinder was entitled to hear evidence of damage to the residue of the property from this loss of access. *Id*.

Under this body of case law, the exercise of police power by the City to close access to and from Callison Drive did not, as a matter of law, deprive the Landowner of reasonable access. That is because the Landowner retained access to its property through a major public highway, namely, Battlefield Boulevard.[2] *Dennison* is simply inapposite. The factfinder could conclude from the facts presented in *Dennison* that there was a loss of reasonable access to the property at issue. In contrast, the facts pled in the present complaint in connection with the closure of Callison Drive do not permit an inference of a loss of reasonable access to the Landowner's property. Therefore, the trial court properly sustained the demurrer.

---

[2] Although we affirm the circuit court's decision, the circuit court swept too broadly in its reasoning. The circuit court reasoned that government effects a taking *only* if there is "a complete extinguishment and termination of all access" from a property to public roads ("A necessary prerequisite to have the trier of fact consider whether or not the property has been damaged is a complete extinguishment and termination of all access to an abutting road."). However, a taking can occur even if there is not "complete extinguishment" of all access, if the remaining access is unreasonably restricted. *Dennison*, 231 Va. at 246.

5

II.    THE 2012 AMENDMENT TO THE VIRGINIA CONSTITUTION.

In 2012, the Virginia electorate approved a constitutional amendment to Article I, § 11 of

the Constitution of Virginia.  That amendment provides as follows:

> Section 11.  Due process of law; obligation of contracts; taking *or damaging* of private property; prohibited discrimination; jury trial in civil cases.
>
> That no person shall be deprived of his life, liberty, or property without due process of law; that the General Assembly shall not pass any law impairing the obligation of contracts, ~~nor any law whereby private property shall be taken or damaged for public uses, without just compensation, the term "public uses" to be defined by the General Assembly~~; and that the right to be free from any governmental discrimination upon the basis of religious conviction, race, color, sex, or national origin shall not be abridged, except that the mere separation of the sexes shall not be considered discrimination.
>
> That in controversies respecting property, and in suits between man and man, trial by jury is preferable to any other, and ought to be held sacred.  The General Assembly may limit the number of jurors for civil cases in courts of record to not less than five.
>
> *That the General Assembly shall pass no law whereby private property, the right to which is fundamental, shall be damaged or taken except for public use.  No private property shall be damaged or taken for public use without just compensation to the owner thereof.  No more private property may be taken than necessary to achieve the stated public use. Just compensation shall be no less than the value of the property taken, lost profits and lost access, and damages to the residue caused by the taking.  The terms "lost profits" and "lost access" are to be defined by the General Assembly.  A public service company, public service corporation, or railroad exercises the power of eminent domain for public use when such exercise is for the authorized provision of utility, common carrier, or railroad services.  In all other cases, a taking or damaging of private property is not for public use if the primary use is for private gain, private benefit, private enterprise, increasing jobs, increasing tax revenue, or economic development, except for the elimination of a public nuisance existing on the property.  The condemnor bears the burden of proving that the use is public, without a presumption that it is.*

6

As the Attorney General noted in an official opinion, the effort to amend Virginia's constitution was "strongly influenced by the decision of the United States Supreme Court in the case of *Kelo v. New London*[, 545 U.S. 469 (2005)]."[3]

In the wake of this constitutional amendment, the General Assembly enacted implementing legislation. "Lost access" is defined by statute as

> "a material impairment of direct access to property, a portion of which has been taken or damaged as set out in subsection B of § 25.1-230.1."[4]

Code § 25.1-100. "Direct access" in turn "means ingress or egress on or off a public road, street, or highway at a location where the property adjoins that road, street, or highway." Code § 25.1-230.1(A). Lost access does not include "an injury or benefit that the property owner experiences in common with the general community, including off-site circuity of travel and diversion of traffic, arising from an exercise of the police power." Code § 25.1-230.1(B). "Material" in this context means "being of real importance or great consequence: substantial," Webster's Third New International Dictionary 1392 (1993), something that is "significant; essential." Black's Law Dictionary 1170 (11th ed. 2019).

The General Assembly specified that "lost access" does "not diminish any existing right or remedy." Code § 25.1-100. Consequently, our prior cases parsing whether the access that remains is reasonable are still relevant. Under the current statute, a taking has occurred if the remaining access is not "reasonable." *In addition*, if the landowner has suffered "a material

---

[3] Va. Att'y Gen. Op. No. 11-135 (Jan. 26, 2012), 2012 WL 339606.

[4] Code § 25.1-100 also specifies that "[t]his definition of the term 'lost access' shall not diminish any existing right or remedy, and shall not create any new right or remedy other than to allow the body determining just compensation to consider a change in access in awarding just compensation."

impairment of direct access to property," that loss is now compensable even if the landowner retains reasonable access. For example, a landowner who owns a property that has access to two major roads may face a material impairment of direct access to property if access is cut off to one of those roads.

Thus, following the enactment of Code §§ 25.1-100 and 25.1-230.1, the inquiry involves several steps: (1) does the landowner retain reasonable access to the property following a taking or governmental action under the police power; and (2) even if the remaining access is reasonable, has the landowner suffered a loss of access that is (a) *direct*, i.e. indirect loss of access is not compensable, and (b) *material*, i.e. significant, essential, or of real importance?

Here, the Landowner's lost access to Callison Drive, although qualifying as a direct loss of access, is not, as a matter of law, "a material impairment of direct access to property" within the intendment of Code § 25.1-100. The Landowner did not plead any facts that would indicate that the closure of access to and from Callison Drive was of real importance or great consequence or that it was significant or essential. Therefore, the trial court correctly granted the City's demurrer.

CONCLUSION

For these reasons, we will affirm the judgment of the trial court.

*Affirmed*.

8